SYGMUNT BIALOBLOCKI, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF WANDA BIALOBLOCKI, PLAINTIFFS-RESPONDENTS, v. VINCENT SAWICKI, DEFENDANT-APPELLANT, AND THE MIDDLESEX EXCAVATING CO., DEFENDANT, AND THE LEHIGH VALLEY RAILROAD CO., DEFENDANT-RESPONDENT.

VINCENT SAWICKI, PLAINTIFF-APPELLANT, v. THE LEHIGH VALLEY RAILROAD CO., DEFENDANT-RESPONDENT, AND THE MIDDLESEX CONCRETE PRODUCTS & EXCAVATING CO., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 11, 1960—Decided November 17, 1960.

Before Judges PRICE, SULLIVAN and FOLEY.

*Mr. Andrew V. Clark* argued the cause for appellant (*Mr. John P. Kozak,* on the brief).

*Mr. James B. Emory* argued the cause for respondent Lehigh Valley Railroad Co. (*Messrs. Lamb, Langan & Blake,* attorneys; *Mr. James B. Emory,* on the brief; *Mr. James J. Langan,* of counsel).

The opinion of the court was delivered by

PRICE, S. J. A. D. In consolidated actions arising out of an automobile accident, Vincent Sawicki appeals from a judgment entered on a jury verdict against him in favor of plaintiffs Bialoblocki in the Superior Court, Law Division, and from a judgment of no cause for action in favor of defendant Lehigh Valley Railroad Company (herein Lehigh) in his affirmative suit against it. In both actions plaintiffs sought damages for personal injuries sustained. The accident, out of which the present litigation arose, occurred at about 9:30 P. M. on November 12, 1957, on Washington Street, Perth Amboy, when an automobile operated by Sawicki, in which plaintiffs Bialoblocki and others were passengers, struck the northeastern girder of a bridge span. No other vehicle was involved. Recovery had been sought against Lehigh on the basis of its alleged negligent placement of an improperly lighted barricade on the bridge.

In seeking reversal of the Bialoblocki judgment against him, as well as the judgment of no cause for action on his affirmative claim against Lehigh, Sawicki contends that (a) that the verdict rests upon the erroneous admission of incompetent evidence, to which Lehigh's counsel was wrongfully permitted to refer in summation; and (b) he was prejudicially affected by remarks made by Lehigh's counsel relating to the voluntary dismissal, at the inception of the trial, of actions originally instituted by Bialoblocki and Sawicki against The Middlesex Excavating Co. (The Middlesex Concrete Products & Excavating Co., herein designated "Middlesex"); and that the general conduct of Lehigh's counsel during the trial so improperly influenced the jury as to render its verdicts "inconsistent with substantial justice." Hereafter we make specific reference to the aforesaid evidence and to the allegedly harmful remarks and actions of counsel, on the basis of which appellant seeks to reverse the judgments against him.

The record reveals that at the time of the aforesaid accident Sawicki was operating his automobile in an easterly direction on Washington Street aforesaid. That street is a two-lane road and at one point passes over railroad tracks by means of a bridge 144 feet in length owned and maintained by Lehigh. The bridge itself is situated high above railroad tracks and both the eastern and western approaches to it are steeply inclined.

For a number of days prior to the aforesaid date Middlesex had been engaged in resurfacing Washington Street in the area near the eastern end of the bridge. The resurfacing had resulted in a two-inch elevation of the roadway at that end of the bridge span. Pending the adjustment of the bridge span plate to meet the new level of the street, a "saw-horse type" barricade had ben placed by Lehigh at the eastern end of the bridge in the eastbound, southern lane. Two kerosene lanterns with red globes were attached to the barricade. At about 7 P. M. on the night of the accident two police officers inspected the barricade and found one of the lanterns lit, but burning dimly. The other was unlighted. The latter was lighted by one of the officers and both lanterns were adjusted so that they might function at their maximum capacity.

According to Sawicki's testimony, it was about 9:30 P. M. when his automobile approached the western end of the bridge. He testified that he was then traveling at approximately 15 miles per hour and had increased his speed to "no more than twenty-five miles" per hour as he reached the center of the bridge. A photograph of this approach, taken on November 13, 1957, shows a large sign reading "Slow Bump," attached to the southwestern girder of the bridge span. Sawicki testified that he saw a sign in that location, which, as he recalled, read: "Slow Down." He stated that he did not notice the barricade until he was within six to eight feet of it, and that he "didn't see" any lights on it. He testified that he became "scared, afraid," but did not apply his brakes. Instead, as there was no

one in the westbound lane of the road, he turned sharply to the left, intending to go around the barricade. However, he failed to complete the maneuver and crashed into the northeastern girder of the bridge span. As a result, he and two of his passengers, Sygmunt and Wanda Bialoblocki, were seriously injured.

Bialoblocki, individually and as guardian *ad litem* of Wanda, instituted the initial action against Sawicki and Middlesex on January 16, 1958. Sawicki filed a complaint on June 11, 1958 against Lehigh and Middlesex. The Bialoblocki complaint was amended July 2, 1958 to include Lehigh as a defendant. On August 21, 1958 the actions were consolidated for trial. Just prior to the empaneling of the jury Bialoblocki and Sawicki voluntarily dismissed their actions against Middlesex.

Following the aforesaid verdicts Sawicki moved for a new trial on several grounds. The motion was denied. On this appeal he has abandoned all of the grounds save those above mentioned. It is noted that the Bialoblockis have taken no part in this appeal. Sawicki asserts in his brief that he has "no objection to the quantum of the verdicts recovered by the Bialoblockis," and states that he concedes that "it would be unfair to them to compel a retrial on the issue of damages" but that "substantial justice does require a new trial on the issue of liability as to all parties."

██ Initially, we shall consider appellant's contention that the judgments against him should be set aside as resting on incompetent evidence and the wrongful use thereof by Lehigh's counsel in cross-examination and summation. The situation, which forms the basis of criticism by Sawicki's counsel, arose during Lehigh's cross-examination of a police officer called as a witness by Bialoblocki. Prior thereto, during cross-examination by Sawicki's counsel, the officer, in refutation of a statement made by Lehigh's counsel in opening, denied that he had found "seventy-five feet of skid marks" at the "scene" of the accident. There-

after, while under cross-examination by Lehigh's counsel, the officer, over initial objection by Sawicki's counsel, was interrogated with reference to certain photographs of the accident scene, then marked for identification only.

The aforesaid photographs had been taken the day after the accident and one of them showed a long mark on the road surface, curving from the southern to the northern side of the street, and terminating near the northeastern corner of the bridge where Sawicki's car had struck the girder. The litigants were in dispute as to whether the aforesaid mark, described as a skid or tire mark, was caused by Sawicki's automobile. To most of the questions addressed to the officer by Lehigh's counsel with reference to the details shown on the photographs no objection was made by Sawicki's counsel, nor did he make any motion to strike any part of such testimony. After the officer had testified, under further cross-examination by Sawicki's counsel, that he had not seen any skid marks on the night of November 12 following the happening of the accident, the latter announced that he was going to offer the photographs as "my exhibit on behalf of Mr. Sawicki." Following the court's observation that he could not then offer them, because he was not then presenting his client's case, Sawicki's counsel stated: "I will reserve offering it, with the understanding that it is my exhibit." Later, two of the aforesaid photographs (Exhibits D–5 and D–6 for Identification) were marked in evidence at the request of Sawicki's counsel and became Exhibits P–1(S) and P–2(S). The photographs are views of the Washington Street bridge, the first taken with the camera placed at the western end of the bridge "looking east," the second with the camera placed "in the center" of the bridge "75 ft. West of barrier looking East."

Appellant contends that reversible error resulted not only from the use of the photographs by Lehigh's counsel at the time the exhibits were marked for identification only, but also by that counsel's reference during his opening and summation to the "tire" or "skid mark" shown in the

photographs. In urging that a reversal of the judgment, which freed Lehigh from liability, should be entered, Sawicki's counsel contends that were it not for the references to "skid marks," there would be nothing in the evidence to justify the finding of any negligence on the part of Sawicki. This conclusion is sharply challenged by Lehigh, which contends that there was ample evidence, aside from the factor of skid or tire marks, to demonstrate that Sawicki was negligent in so operating his car that it failed to go around the barricade, which he testified he intended to do, but instead crashed into a girder on the northern side of the bridge.

Appellant contends that the trial court erred in permitting the aforesaid references by Lehigh's counsel (during the trial and in summation) to "skid marks" and committed further error in refusing to set aside the judgment based on the jury verdict which had determined that Sawicki was at fault. Despite appellant's present criticism of the conduct of Lehigh's counsel and of the trial court's failure to bar or at least curb that counsel's interrogation and summation with reference to "skid marks" and use of the aforesaid pictures, no objection, with the single exception above noted, was voiced by his attorney at trial. Appellant asserts that the trial court's action in overruling his objection constituted reversible error as defined by R. R. 1:5–3(b), 2:5. The complete answer thereto is that, by his own deliberate act, appellant's counsel placed in evidence the very photographs, the use of which by Lehigh's counsel he now asserts constituted reversible error. As noted by the trial judge when Sawicki's counsel voiced his objection to Lehigh's interrogation with reference to the photographs, at which time the exhibits simply bore identification marks, there was then "no documentation" thereof. It was Sawicki's counsel's act which furnished the "documentation." Under such circumstances we refuse to reverse the trial court's action on appellant's initially advanced theory that, under the aforesaid rule, a failure to sustain his contention would be "inconsistent

with substantial justice." We reject the thesis advanced by appellant that he may, under *R. R.* 1:5–3(*b*), 2:5, or under *R. R.* 1:5–3(*c*), 2:5, which he also invokes, claim reversible error in Lehigh's aforesaid use of the photographs when it was he who gave the jurors the opportunity to observe and assess the nature and significance, if any, of the mark plainly visible on the highway.

We turn to a consideration of the second point advanced by appellant for reversal. As above noted, this was centered on references by Lehigh's counsel to the voluntary dismissal by Bialoblocki and Sawicki of their actions against Middlesex. The criticized references were those made by Lehigh's counsel in his opening, during the course of the trial, and in his summation. In seeking a reversal of the judgment, appellant characterizes the references to Middlesex as "* * * designed to prejudice the jury into believing that his client was the victim of some collusive undertaking."

The criticized opening remarks, to which appellant specifically alludes, are those in which Lehigh's counsel, after referring to the suits by Bialoblocki and Sawicki against Middlesex, said:

"* * * And lo and behold, yesterday, for a reason I don't know, they suddenly take a dismissal of that case. Why? You can draw inferences. I can too, but I can't tell you what I draw. But yesterday, when the case was called in the list, and before we selected you as jurors, both plaintiffs decided that they would give up as to the Middlesex Concrete."

The single criticism, expressed at trial by Sawicki's attorney with reference to the opening statement of Lehigh's counsel, was as to its form, which he characterized as "a summation and argument." No objection, however, was made to that portion of the opening which described the paving work done by Middlesex and the institution and subsequent voluntary dismissals of the suits against it by Sawicki and Bialoblocki. Appellant now labels the opening as an "improper offensive" and as an element warranting reversal of the judgment.

On the ground of immateriality, Sawicki's counsel objected during the trial to attempts by Lehigh's counsel to show, in cross-examination of a police officer and of Sawicki, the extent of the paving work which had been done on the bridge by Middlesex as well as the condition in which it had left the road bed on the day in question prior to the erection of the barricade by Lehigh. The trial attorney for Sawicki became a voluntary witness for his own client and was interrogated by his then co-counsel, who now appears by substitution as sole counsel for Sawicki on appeal. In explanation of his appearance as a witness, the attorney testified that he did so because of the opening remarks by Lehigh's counsel. He stated that he desired to clarify his reason for instituting suit against Middlesex and later dismissing it. His sole explanation for suing Middlesex was that it had been named originally in the Bialoblocki action; that his voluntary dismissal of the suit was based on the fact that his investigation convinced him that Middlesex "was not liable." He stated that his client had neither received nor been promised any money for such dismissal. Lehigh's counsel then called the Bialoblockis' trial attorney as a witness. He testified that his clients' initial action was against Middlesex and Sawicki only; that thereafter he ascertained that the barrier had been placed on the bridge by Lehigh and not by Middlesex, so he filed an amended complaint including Lehigh as a defendant; that still later he concluded that Middlesex "had nothing to do with the accident," so he joined with Sawicki's counsel at the opening of the trial in voluntarily dismissing the action against Middlesex; that his client received no money as consideration therefor.

Although critical, as aforesaid, of the references voiced by Lehigh during the trial to the dismissal of the actions by Sawicki and Bialoblocki against Middlesex, Sawicki levels his chief attack on the summation by Lehigh's counsel. Appellant particularly criticizes the following statement by Lehigh's counsel:

"\* \* \* I want to know why they let them [Middlesex] out. It is perfectly apparent; they were let out. I want to know why they sued them in the first place. Because there is something a little funny about that. With the complete investigation, there is something behind the scenes that frankly, I don't like."

Appellant contends that he suffered "irreparable harm" as the result of the aforesaid conduct of Lehigh's counsel; that the assertions "fall within the strictures of *R. R.* 1:5-3(*b*)"; and that "[a]dditionally \* \* \* it was plain error to permit the \* \* \* conduct of a trial by highly improper insinuations and barely-concealed innuendo." Based on this latter contention, he asks us to apply *R. R.* 1:5-3(*c*).

In resolving the issue raised by appellant, it is significant that, despite the present contention that the comments by Lehigh's counsel relating to Middlesex were "offensively prejudicial" and that they "worked to distort and mislead" the jury, no such concern was expressed by appellant's counsel or co-counsel at trial. They asked only that the following request be charged:

"During the course of the trial there has been reference to the dismissal of a suit against a defendant, Middlesex Concrete Products and Excavating Company. I charge you that there has been no proof of any facts whatsoever which in any way connected said company with the accident in question."

The court honored their request. Compare *State v. Hipplewith,* 33 *N. J.* 300, 318 (1960). Not only did they abstain at trial from voicing the harsh criticism now uttered, but at no time did they seek a mistrial or even move to strike any of the remarks made by Lehigh's counsel. Whether they then believed that the remarks made by Lehigh's counsel would not seriously affect their client, or tactical reasons dictated that they abstain from moving for a mistrial or even registering an objection, is immaterial. What is important is that at no time did they protest to the trial court or contend that their client was being prejudiced. Compare *State v. Hipplewith,* 33 *N. J.* 300, 314 (1960). They now assert that the trial court "succumbed along with the jury,

to the pervasive influence of counsel's tactics and thus fell into error within the meaning of *R. R.* 1:5–3(*b*) and 1:5–3(*c*)."

The proper disposition of this appeal requires that certain basic principles be restated and applied.

*First:* "The primary office of an objection or a motion directed to the competency or relevance of evidence is the avoidance of error and the purging of the proofs of extraneous and harmful or prejudicial elements." *Priest v. Poleshuck,* 15 *N. J.* 557, 564 (1954).

*Second:* The importance of strict adherence to *R. R.* 4:52–1 is to be recognized. It is there stated that: "* * * No party may urge as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of the objection. * * *" See *Lippman v. Ostrum,* 22 *N. J.* 14, 26 (1956).

*Third:* "[T]hat ordinarily failure to object to the charge of the court will preclude criticism thereof on appeal." *Schult v. H. & C. Realty Corp.,* 53 *N. J. Super.* 128, 136 (*App. Div.* 1958), certification denied 29 *N. J.* 279 (1959); *Grammas v. Colasurdo,* 48 *N. J. Super.* 543, 548 (*App. Div.* 1958); *Lertch v. McLean,* 18 *N. J.* 68, 74 (1955).

*Fourth:* "[E]ven trial errors to which objection is taken will not result in a new trial unless 'a denial of the relief sought' would be 'inconsistent with substantial justice.' *R. R.* 1:5–3(*b*) * * *." *Buccafusco v. Public Service Elec. & Gas Co.,* 49 *N. J. Super.* 385, 392–393 (*App. Div.* 1958), certification denied 27 *N. J.* 74 (1958).

*Fifth:* "Oversight and inadvertencies of the court deemed to be harmless and unimportant by the attorney at the trial cannot without diligent objection be normally exaggerated on appeal. In such exigencies a degree of passive indifference, if not acquiescence, is inferred." *Valls v. Paramus Bathing Beach Inc.,* 46 *N. J. Super.* 353, 357 (*App. Div.* 1957).

*Sixth:* The special relief afforded by *R. R.* 1:5–3(*c*) is to be invoked only where " 'substantial justice' has not been done." *In re Stern,* 11 *N. J.* 584, 590 (1958). It is to be utilized "when from the whole record" the appellate tribunal "is convinced substantial justice was not done below and that such error or errors brought about the unjust result." *Williamson v. Berger,* 11 *N. J.* 500, 505 (1953). The rule is "sparingly employed." *Ford v. Reichert,* 23 *N. J.* 429, 435 (1957).

Here, appellant, who failed at trial to make any objection to the summation by Lehigh's counsel or to object to the court's charge, now insists that the court committed plain error "in failing to restrain counsel and in failing to keep such prejudicial material from the jury."

In assessing the merit of appellant's claim of prejudice we examine the evidence bearing on the basic issue of negligence which the jury was called upon to resolve. The trial court rejected Sawicki's motion for a new trial based, among other grounds, on the contention that the verdict was against the weight of the evidence. Although, in seeking a reversal, appellant does not make this ruling by the trial court a specific ground for appeal, he asserts that the evidence was so "overwhelmingly" in favor of Sawicki that it is apparent that the verdict could be explained only on the basis of the prejudicial action of Lehigh's counsel. The trial court disagreed. So do we. The jury was fully justified in disbelieving Sawicki's testimony that, as he entered upon the western approach of the bridge, he was proceeding at a speed of only 15 miles per hour and that, as he traveled on the surface of the bridge a distance of 120 feet towards the barricade, his maximum speed was 25 miles per hour. By his own testimony he attempted to maneuver his car around the barricade, but instead crashed into a girder on the northern side of the bridge with such force as to wreck his car and severely injure occupants thereof. The jury had the benefit of photographs which showed the extensive damage done to the automobile.

Appellant testified that he did not see the barricade until he was six or eight feet from it, but the jury would have been fully justified in finding that had he been making proper observation he would have noted its presence sooner, or that operating his car at a greater speed than he testified, he did not have the vehicle under proper control. It is clear that the verdict had ample support in the evidence and that the appellant is on unsound ground in asserting that it is the product of prejudice.

Our rejection of appellant's contentions is not to be deemed as indicating approval of the methods which Lehigh's counsel elected to pursue. We are declaring only that in the instant case they did not result in a denial of "substantial justice." The judgments of the trial court are affirmed.